732-38 Mr. Vander Blumen Good morning, your honors. May it please the court. My name is Tom Vander Blumen. I'm from Greenville, South Carolina. I'm here today on behalf of the petitioner Andy L. Smith. Mr. Smith brought this case before the Merit Systems Protection Board charging that his employer, the Postal Service, had violated his rights under the Uniformed Services Employment and Reemployment Rights Act, otherwise known as USERRA. Specifically, he charged that the Postal Service failed to properly re-employ him when he returned from active duty military service in 2005. He claims that he was entitled to occupy a full-time position with the Postal Service. Which is right. That's correct, your honor. The government has conceded that point. So we're really just down to remedy. That's exactly right, your honor. And that is the issue that's before this court. What precisely are you asking for in terms of hours, numbers? Mr. Smith is claiming he's entitled to out-of-schedule premium pay for the hours he worked outside of instead of what his regular schedule should have been. But as a practical matter, what does that mean? Yes, ma'am. I think that decision is going to have to be determined by the board after comparing his specific time records to exactly what his regular schedule would have been. And at this point, I think the decision of the board was simply that Mr. Smith was not entitled to out-of-schedule premium pay because no one else received it. And that's a false premise. But it seems to me it's intertwined. I'm not clear on how you would determine what you're asking for in terms of out-of-schedule. Out-of-schedule, by definition, means you normally work 9 to 5, and now you're asked to work another schedule. In this instance, since we're sort of backdating it, what two schedules are you using for comparison to determine the premium? As best I can tell from the record, this having been a pro se case for the board and me looking at this after the fact, it appears that the Postal Service has conceded that Mr. Smith was entitled to occupy a tour one, what's called a tour one position, which has a certain set schedule. I believe its schedule is from 11.30 or 10.30 at night until 6 o'clock, 7 o'clock in the following morning. So you would use that as your baseline, and then you would determine based on his schedule during the 7 to 8 months in question which hours he worked outside of and instead of that schedule. And that would be the determination of his out-of-schedule premium pay. But suppose that during that period he never worked 10.30 to 6, but he always worked 6 to 2. He wouldn't be entitled to out-of-term pay, would he? I understood your theory to be the problem was not that he had a period of work that was different from what he would have had if he had initially been put in the higher rated job, but rather that he didn't have a consistent period of work and that he was bouncing around from one tour to another. And that was the problem, not that they didn't give him the particular set of hours that he would have had. Well, Judge, it's a fair point, and I think that both of those statements are true. First of all, as a returning full-time employee, he would have been entitled to a regular schedule. A regular schedule, but not a particular regular schedule, right? Fair enough, but at least some schedule. Okay, I understand. And I believe that the record would support that that schedule was this Tour 1 schedule. And I think there is some confusion in the record below, and I've done my best to parse this out, and Ms. Kilholz has been very helpful as well. But as best I can tell, Mr. Smith had the belief that there were two positions that were open he was bidding for. One was called a Tour 1 position, and one was a Tour 2 position. When he bid on the positions, the Tour 2 had already been filled, and so he was entitled then to the Tour 1 position, which went unbid and unfilled. And if you look at the government's, excuse me, the Postal Service's letter to Mr. Smith, which I believe is in the record at 895 in the appendix, it explains that he was entitled to fill this particular job slot, which was listed as 6982630. That was a Tour 1 position. But what I'm unclear on, and I'm not sure whether this is the same thing Judge Bryson was referring to or not. And I'll come back to your questions. My thought was what you were asking for, was that aside from how much the difference in pay was between the two jobs, at the time, to the extent premium, you were to allow premium pay if you have a normal schedule, and then you're required, which understandably, it disrupts your life if you're required to work out of that schedule. I thought your theory was based on the fact that as a non-collective bargaining employee or whatever, he wasn't entitled during that period of time to premium pay. And he should have because, indeed, he should have been treated as a collective bargaining. So I thought you were using for basis for comparison what he actually did. Let's say not what he should have been. But if he, for that six-month period, indeed, was working one particular shift 70% of the time, but then was asked to work a different shift 30% of the time, that you were saying your theory of this case was he should be entitled to premium pay for the difference. I didn't know that you were talking about, it seems to me that makes a little more sense, maybe not, than you're trying to get premium pay for the difference between the change in shift that he had versus what he should have had on tour one. I understand your confusion. Let me see if I can try to clear that up. I apologize if the issue is not as crystal as it could be. As I understand it, Mr. Smith was, and I think it's taken as a given in the concession, that Mr. Smith was entitled to return to a full-time position. That would have entitled him to a regular schedule and a certain schedule with certain hours. And as Judge Bryson has pointed out, instead of that, he was given a part-time position. He was bounced around from position to position and from hour to hour. At some point, however, he would have been entitled to at least some regular schedule that you have to use as a baseline to determine what other hours were outside of that premium. Because if we take as a given that he was working all over the map, you have to somehow calculate what the remedy is, and that is what the court has said. So you would think, though, the baseline would be what he would have been working, the tour he would have been working if he was on the schedule. My question was it would seem like if you're really using premium pay for what it was intended to be, the baseline would be the tour he was working, he actually was working on, and then relative to that what his, I mean, if you're trying to say he just needs to be compensated because he should have been, gotten some premium for the difference between what his normal schedule was and what it wasn't, the reality of that is it's what it actually was, not what hypothetically you should, you understand my... I understand entirely. What I think perhaps the confusion is that, my understanding is when Mr. Smith returned to the Postal Service as an employee, he didn't, even though he was treated as a part-time employee, he didn't work a full tour in a particular set of hours for that tour. So you can't use what he actually came back to as the baseline because sometimes he worked an overlapping tour, sometimes he worked less of a tour. But if you took, I think we're, Judge Croson and I are trying to get at exactly the same point. To take her example, and I understand that this isn't, it isn't this simple, but suppose that he did spend 70% of his time on one eight-hour tour and set aside the fact that it was part-time, just assume he was part-time, but he was working full eight hours, and 30% of his time on different hours. It would seem to me that your argument would be, or perhaps I'm being presumptuous, one could argue that he's entitled to the premium payer for the 30%, not for the whole thing. I agree. I agree with that. And my point is that if you go back to the principle behind USERRA and this escalator principle and the idea that the purpose of USERRA is not to disadvantage an employee when he goes off to military service and to treat him as though he had been in continuous service at the employer but for his military time, then if he had been on that position while he was still at the Postal Service, he would have gone right into that slot with that particular schedule. No, I understand that. Can I ask you another question about that before our time runs out? And that is looking at the out-of-premium schedule, whether it's a regular – it's called a policy? Yes, ma'am. 434.6? Yes, ma'am. Down somewhere – I don't know what the number is. I guess it's under Part B, although the numbering here is a little odd. I'm referring to that. He is being compensated now. He has already gotten paid for a full regular schedule as a full-time employee. What he should have had, right? Well, he has been compensated for the difference between the hourly rate that a part-time employee makes and what a full-time employee makes. In other words, to bring him up to compensation as a full-time regular schedule employee, right? That's correct. Assuming – taking out of the equation the out-of-schedule premium pay, he has not been made whole. But what I'm confused – maybe I'm just misunderstanding this provision, but this provision says if employees work their full regular schedule, then any additional hours worked are not instead of their regular schedule and therefore are not considered out-of-schedule premium hours. That's correct. So if he's already been compensated in such a way so that we put him in the position he would have been – in other words, we put him in a position as if he had worked a full regular schedule, then I'm reading this to say that precludes him from getting premium pay. I think I understand what your question is, and I think I know how to answer that. The assumption behind the question is that he has been paid for a full schedule. He may have been paid the correct hourly rate as a full-time employee for 8 hours of work on a particular day, but that doesn't necessarily mean it was 8 hours that fell within what his regular schedule should have been. And the purpose behind this provision and the provisions here are to say – say, for example, I have this 9-to-5 schedule, and my supervisor comes to me in an appropriate amount of time and says, I want you to work the night shift tonight. I don't want you to work the 9-to-5 schedule. If you do that and you work that schedule, you're working outside of and instead of that schedule. The purpose of this provision is what if the employer comes to me and says, I want you to work – instead of your regular 9-to-5, I want you to work 9-to-7, 2 hours longer. Well, you've already worked your 8 hours for your regular shift, so the 2 extra hours you work are not outside of – they are outside of, but they're not instead of your regular schedule. So those hours are to be compensated as overtime, not as out-of-schedule premium pay. Yeah, but my question about this language is if he's been – the purpose of what's happened to him so far is to put him back in the position he otherwise would have been in, to recreate this. And if the Postal Service has paid him the difference in money, in other words, it's brought him back to the point where he had – he's been compensated for a full regular schedule. Why this then wouldn't apply? I mean to say that when I say he's been compensated, I mean that, as I understand it, a part-time employee makes a certain hourly wage. A full-time employee makes a certain higher hourly wage. All they have done is calculated the difference between those 2 wages and paid him – But the only way they can pay him is because they've made an assumption, okay, we're going to treat you as if you had worked this full-time regular schedule, and therefore you're going to be compensated for. And so why doesn't that kind of put him – It does not, and I am into my real time, but I would like to answer your question and make sure that you don't have any lingering doubts about the answer. The answer, I believe, is that although he may have been compensated for an hourly rate that is a full-time employee's hourly rate, he was still working outside of and instead of what his regular schedule would have been. And so it's not enough just to pay an employee. If you ask that employee to work the night shift and say, well, I'm going to pay you the same hourly rate you would have made during the day shift, but I want you to work the night shift, that employee is still being asked to work outside of and instead of his regular schedule and is entitled to the premium. And is it clear, to bring this to the final point, is it clear that had he been from day 1 hired on a full-time basis, getting full-time pay but had nonetheless been asked to work the exact hours that he was asked to work as a part-time, that he would have been given premium pay for those extra hours? I understand that this was the policy of the Postal Service not to give outside hours to people on the full-time, but would he, had they given him the hours that they gave him as a part-time, would he have gotten premium pay? Yes, he would have because he would have been outside of the schedule he was entitled to return to. But can I just ask one follow-up? Yes, ma'am. But what you're saying seems to at least cement the fact that the amount of money they would calculate, even if you were right, wouldn't be one and a half, it would be just the premium part. Yes, ma'am. You're asking back for the premium, that additional 50% or whatever it is. Absolutely. Not for 150%. Not every hour he worked during that period. You would take a look at the baseline and figure out what was outside of it. Okay. Thank you, Your Honor. Thank you. Mr. Vandervlomen, we'll give you your 3 minutes rebuttal back. Thank you, sir. Ms. Kilfoyle. May it please the Court. It appears that at this juncture, Petitioner and the government are actually in agreement about almost all of the factual issues in this case. The dispute is the meaning of those issues and what remedy Mr. Smith is entitled to under USERRA. We're in agreement that Mr. Smith, upon his return from military service, should have been placed in a full-time custodian position with some regular schedule. The government agrees that the schedule that he would have been placed in would have been Tour 1. In fact, Mr. Smith was placed in Tour 2 as the result of a negotiated grievance settlement with the Postal Service and then subsequently was given the opportunity to choose either Tour 1 or Tour 2 as a result of proceedings. Okay. But you can see that not only was he entitled to a full-time position so you've compensated him for the difference in money, but that he was entitled to a regular schedule. Yes. So the question presented in my, I think, in this case, is whether or not the fact that he wasn't, that is a compensatable sort of issue. And I wonder why it isn't. I mean the government says it isn't, but there's a way to calculate it and we have a little bit of disagreement maybe how, but why isn't that compensatable, compensable, sorry. There's two answers to that question. The first answer is that under USERRA the right question and what the Board looked at is whether Mr. Smith, if he had been immediately placed in a full-time custodian position with a regular schedule, would he have worked outside of that regular schedule and earned out-of-schedule premium pay in that scenario. And that's exactly what the Board looked at. And the way it determined that was it looked at whether other full-time maintenance custodians in the East Texas Processing and Distribution Center worked outside of their regular schedules and received out-of-schedule premium pay because that's the position that Mr. Smith would have held and that's an indication whether the Postal Service would have asked him to work outside of that regular schedule and would have paid him out-of-schedule premium pay as well. And that's the inquiry under USERRA. What would have happened if he was placed in the position that he should have been placed in? And all the evidence of record. But two things would have happened. One, he would have gotten more money. But the other thing is he would have had a regular schedule. So how does just giving him the monetary part of that compensate him for not having had a regular schedule to which he was entitled? And why do you think USERRA would preclude him from getting that? Because the inquiry under USERRA is what would have happened if he had been placed in the correct position. And the evidence shows that he would not have worked outside of his regular schedule if he had been placed in the correct position. Exactly. Similarly, for example. But he was placed outside of his normal schedule. He was, but that's improperly mixing what actually happened and what hypothetically would have happened. For example, Mr. Smith was paid as a full-time employee. He was paid as if he'd worked a full-time schedule. He actually worked part-time, but he wasn't limited to being paid part-time because he worked part-time. The Postal Service looked at what should have happened to Mr. Smith, and that's why he was paid full-time. He wasn't limited because he actually worked part-time. I'm not talking about saying that he ought to be compensated if indeed he was working a part-time position and it was one shift, even if that shift was a different shift than the one he should have been working. At least it's my view at this juncture that I'm not suggesting he would be entitled to premium pay because there was a different shift between the one he should have been and the one he's in. My concern is if he was indeed in a situation where he was working generally one shift, but then the situation where he would have otherwise been entitled to premium pay if he had been a full-time collective bargaining employee, why he shouldn't be entitled to be compensated for the fact that his shift was shifting under the circumstances where premium pay is required. First, because the evidence demonstrates that he would not have been asked to work outside of his regular shift if he had been placed in a regular shift and thus would not have earned out-of-schedule premium pay. That's the reason, because we're looking at what should have happened. Secondly, because out-of-schedule premium pay is not provided to compensate for a shifting schedule generally. It's exclusively limited by the language of the regulation to a situation where someone has an established regular schedule and is asked to work outside of that schedule on a temporary basis at the request of management. I'm not sure I understand. Help me out with understanding the scope of your theory of remedy here. Suppose that, well, we can use a couple of hypotheticals, but suppose that, for example, in the job he was given, the part-time job he was given, which was not the one he wanted and not the one to which we ultimately agree he was entitled, he was required to purchase his own uniform, and it cost him $300. But he wouldn't have been required to purchase his uniform if he'd had the full-time position, let's say. Do you think he doesn't get compensated for the $300? Not under USERRA, but he may have another theory under which he's entitled to that. Even though he's worse off than he would have been to the extent of $300 than he would have been if they'd done what they should have done, which is to put him in that other job on day one, he's out $300. And had he been put in that other job on day one, he wouldn't be out $300. Why not? Why isn't he worse off by virtue of your violation? He may be worse off, but I don't know that that's the proper inquiry under USERRA. Why isn't it the proper inquiry? Isn't that what USERRA is trying to do, is put him back in the same position that he would have been had he been hired into the position he was supposed to be hired in on day one? But in this case, that's exactly what the board tried to look at, and that's why they looked at whether, well, if you had been placed in that full-time position, would you have worked outside of that? Yeah, but that's like the uniform. They would be asking, well, if you'd worked outside of that, if you'd worked in the full-time position, you never would have had to buy a uniform. Therefore, you're getting everything you're entitled to. I think that in some ways the uniform is a distinguishable situation from the out-of-schedule premium pay, though, because the uniform you could simply return $300 to him, but out-of-schedule premium pay would require that he get a benefit that he would not have been entitled to under the regulation because he had no actual full-time schedule at that point that he could have worked out of, so you would have to pretend that he was retroactively put into a schedule that he was not in fact in. It's a mixing of a hypothetical and actual situation. He actually worked a schedule other than the one he should have been put into. Okay, let's try another hypothetical. If you don't like that one, let's try another one. Suppose that in his first job, the part-time job, he was required to work a lot of overtime, but even having worked a lot of overtime, he still didn't get up to the amount of money he would have made in the full-time job. Do you think he's entitled to compensation for the amount of overtime he worked during that period when he was working overtime? So he was working 70 hours a week during the several-month period before he was actually reinstated to the position he should have had in the first place. Is it enough to say, well, that's too bad because at the higher position, we don't authorize overtime? You wouldn't have had any overtime, therefore you don't get any additional overtime compensation. I'm not sure I fully understand the question, but you're saying that… Well, maybe I didn't state it very clearly. To make it, I think, perhaps crisper, he works overtime in the part-time position. The full-time position is a no-overtime position. We just, as a policy, we don't give overtime to the full-time people. So he's forced to work many more hours than he would have worked in the better position does he get paid for those hours at the better position overtime pay rate? So you're saying that he worked overtime in a part-time position, but he could not have worked overtime in a full-time position? Correct. Does he get paid for that overtime? Is that, am I understanding the question? That's right. Yes, he would get paid for the overtime. We're not taking anything back. No, but the overtime at the rate, at the higher rate… At the underlying rate of pay. No, he would not get paid at the rate of… So he's worse off than he would have been. Again, it's like my uniform case. He's worse off than he would have been in the event that the Postal Service had put him into that first position on day one. Worse off in the sense that he's lost a lot of time that he's had to work. And he has not been compensated for that at the rate that he would have been compensated for it had he been given the right job on day one, right? I think the question is though not is Mr. Smith worse off because his schedule wasn't consistent. The question is, is out-of-schedule premium pay a benefit of employment that he's entitled to as a result of that, correct? And we're all in agreement that the benefit of out-of-schedule premium pay only comes from the ELM. That's not a benefit to which he would otherwise be entitled under some statute or regulation. And according to the language of the ELM, you get out-of-schedule premium pay when you are in a regular full-time schedule and you get advance notice and then management pays you time and a half for those hours outside of your full-time schedule. So the issue is not is he worse off because his schedule moved around. The question is, is out-of-schedule premium pay the remedy for that? And the question is whether under USERRA he's entitled to that because he actually worked a different schedule than the one that he would have hypothetically worked if he had been placed in the correct position. But do you agree then that if instead of the job he had, which was a part-time flexible thing, let's assume he were in a position initially and improperly that was a regular schedule and he was asked during that time to shift his schedule on 10 occasions and he wasn't entitled to, he didn't get his premium pay because he wasn't a collective bargaining employee, correct? I mean if he had had a normal schedule, just at a lower rate of pay and a different job and otherwise qualified for premium pay but he didn't get it because he wasn't in an entitled position, would your answer then be different? In this case, would he be entitled to get compensated for that premium pay retroactively? Well, he would be entitled, the question is under USERRA, his position would have been Tor 1. So if he had been placed in Tor 1, would he have worked outside of that position? That's his USERRA remedy. Whether he would be entitled to out-of-schedule premium pay for actually working outside of some other regular schedule under the ELM is not actually a USERRA question. It's a question of interpretation of the ELM. If he had a position and he worked outside of it under the ELM, he would be entitled to out-of-schedule premium pay. Retroactively because he didn't get it at the time because he wasn't a covered employee. He didn't get it because he was a part-time employee. All full-time employees are covered. But you say retroactively he would have been entitled to it. It wouldn't be an issue of retroactively though in that situation because he would actually be a full-time employee working outside of a full-time schedule. So he would actually be entitled to it under the ELM, not as a matter of USERRA assuming a hypothetical situation. For these reasons, we ask that the Court affirm the MSPB's decision. Thank you, Ms. Kilfoyle. Mr. Brenda Bloman has some time left. Just a few points on rebuttal. First of all, the Postal Service takes the position that the evidence shows that he would not have received this out-of-schedule premium pay if they'd known he was supposed to be doing 201. That's kind of like saying, oh, if we'd known you were supposed to be in 201, we wouldn't have asked you to work outside that schedule and we wouldn't have paid you this out-of-schedule premium pay. And here's our evidence to prove that. But that completely misses the point. The point is not what would have happened to him had they known, but what did happen to him. And they've now conceded he should have been in a full-time position. And they've now conceded in response to Judge Prost's question that he should have had a regular schedule. I think that's all there is to it. There has now been an established USERRA violation. The Board should have entered an order compensating him for that, and the compensation should be calculated based on when he worked outside of what that regular schedule should have been. The other point I want to make is, and this follows up on Judge Bryson's question and point that he's being made to be worse off. That's the whole purpose behind USERRA. Employees should not be disadvantaged by having to go into the military, and they should not be disadvantaged by coming back to their jobs and being worse off than they were when they left as opposed to their colleagues who stayed at home. That's what Mr. Smith's case is about, and we would ask that this decision of the Merit Systems Protection Board be reversed. But there are limits to the worse-off type analysis. I mean, suppose that the job he was given instead of the job he should have been given involved heavy lifting, and he ruined his back and ended up amassing $100,000 in medical bills, now setting aside tort remedies. I don't think USERRA would say that he has a $100,000 entitlement, right? No, sir, and that's not our position. So the superficially attractive notion that he's been made worse off doesn't really carry us all the way through the analysis. Some kinds of worse off may be other kinds of worse off. Absolutely, but I think we're within the heartland of what the worse off is under USERRA. He was forced. He was entitled to come back as a full-time employee. He was entitled to come back to a regular schedule. Instead, the Postal Service had him bouncing around on all kinds of different schedules. He's not going to get that time back. He's not going to get that inconvenience back. The only way to compensate him is at the out-of-schedule rate. Thank you, Your Honor. Thank you, Counselor. We'll take the case under revising.